UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN J. ROWE,

Plaintiff,

Case Number 13-14898
Honorable David M. Lawson

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_______________________________________/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE FOR FURTHER PROCEEDINGS**

The plaintiff filed the present action on November 27, 2013 seeking review of the Commissioner's determination that, as of his eighteenth birthday, he was no longer eligible to receive supplemental security income (SSI) benefits under Title XVI of the Social Security Act. The case initially was referred to a magistrate judge under 28 U.S.C. § 636(b) and E.D. Mich. LR 72.1(b)(3). Thereafter, the parties filed cross motions for summary judgment. Since then, the Court has withdrawn the reference and will address the parties' motions without the benefit of a report from a magistrate judge. The record convincingly demonstrates that the administrative law judge (ALJ) failed to give good reasons for rejecting the opinion of a treating source. However, the record does not conclusively establish that the plaintiff is entitled to benefits. Therefore, the Court will reverse the decision of the commissioner and remand for further proceedings.

I.

The plaintiff, who is now twenty-four years old, previously was approved for SSI benefits as a child and received them through his eighteenth birthday on January 15, 2009. He graduated

from high school and has never worked. He has been diagnosed with cerebral palsy, degenerative disc disease of the lumbar spine, and bipolar disorder.

As required by Section 1614(a)(3)(H) of the Social Security Act, the Commissioner re-determined the plaintiff's eligibility for SSI benefits after he turned eighteen. *See* 42 U.S.C.A. § 1382c(a)(3)(H)(iii). Applying the standard for an initial application for SSI by an adult, the Commissioner determined on July 10, 2009 that the plaintiff no longer was disabled as of July 1, 2009. That determination was upheld after a disability hearing by a state agency disability hearing officer. On July 12, 2011, after the conclusion of the proceedings before the state disability hearing officer, the plaintiff filed a request for an administrative hearing on the determination of his disability. On April 26, 2012, ALJ Kevin W. Fallis conducted a hearing at which the plaintiff appeared and testified. The plaintiff was twenty-one years old at the time. ALJ Fallis issued a written decision on June 28, 2012 in which he found that the plaintiff was not disabled.

In his written decision, ALJ Fallis summarized the plaintiff's testimony at the hearing and his findings regarding the plaintiff's credibility and limitations as follows:

> The claimant testified that he is unable to work due to cerebral palsy that affects his legs. He states that he receives Botox injections every 3 months to reduce involuntary muscle spasms. He has weakness in his right leg and both legs go numb. The claimant stated that he cannot stand long enough to take a shower. He also has arthritis in his right leg. He was prescribed the use of a cane a few weeks [before the hearing]. The claimant stated that his leg pain radiates into his lower back. He stated that he has always been in physical therapy. The claimant stated that he gets muscle spasms every day that last from 5 to 10 minutes.
>
> The claimant testified that he has also suffered from bipolar disorder since he was 16 years old. He has mood swings and his doctor is consistently changing his medications. He has anxiety and panic attacks occasionally. He has friends who check on him every day. He does not drive and relies on friends and cabs for transportation. The claimant stated that he uses a computer once a month for about 10 to 15 minutes. He does not have any problems sleeping since he takes sleep medications.

> Regarding his physical capabilities, the claimant testified that he can lift about 10 pounds, sit about 10 minutes, stand for 10 to 15 minutes before having to sit down, and walk for 5 to 10 minutes. He is able to perform household chores, participate in physical therapy, and care for his 2-year-old son. He performs household chores in small increments. His friends and family help by taking out the garbage and shoveling snow. The claimant stated that he is never left alone with his infant son because he falls often.
>
> The undersigned [ALJ] questioned the claimant about his documented non-compliance with physical therapy. The claimant explained that he has difficulty getting transportation and is not always able to make it to his appointments as scheduled.

Tr. 20.

The ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." However, he also believed that the plaintiff's description of the "limiting effects of these symptoms" was not credible. *Ibid.* The ALJ made a finding of the plaintiff's residual functional capacity based in part on the medical evidence.

The ALJ summarized the extensive medical history documenting the plaintiff's diagnosis with cerebral palsy at age 1, and ongoing treatment and physical therapy over many years related to this condition, including through February 27, 2010, when the plaintiff was discharged from physical therapy for non-compliance. Tr. 20-21, 22. He also summarized the reports of several mental health practitioners regarding the plaintiff's treatment for mood swings, attention deficit disorder, and bipolar disorder.

At the conclusion of the hearing, when the ALJ asked the plaintiff's representative (his mother) if there was anything else for the record, she submitted a medical source statement that was identified as prepared by Dr. Darla Hedrick, a physical medicine specialist, on November 11, 2011. Tr. 79. The ALJ stated that the report would be added to the record and considered during his

deliberations. Tr. 79-80. However, when he prepared his written decision, ALJ Fallis inexplicably discounted the report prepared by Dr. Hedrick as unauthenticated and prepared by an "unknown" source. He apparently reached that conclusion because he found the signature "illegible." For that reason, he accorded "little weight" to Dr. Hedrick's opinion. The ALJ also said he could not discern whether the report came from a consultant or a treating source. Nonetheless, the ALJ acknowledged that the doctor "treated the claimant 20 times in the past 2 years for cerebral palsy, bilateral lower extremity spasticity, and osteoarthritis." Tr. 21. He also related the doctor's findings:

> The medical evidence of record contains a medical source statement dated November 11, 2011, that includes an illegible signature. The reporter treated the claimant 20 times in the past 2 years for cerebral palsy, bilateral lower extremity spasticity, and osteoarthritis. [The claimant] displayed symptoms of quick lower extremity fatigue, walking slowly, decreased balance, spasticity and muscle spasms, lower extremity weakness, and joint pain in his knees, feet, and hips with activity. He had reflex changes, tenderness, crepitus at the bilateral knees, and muscle atrophy. The claimant's pain was often to frequently severe enough to interfere with attention and concentration. He had moderate limitation in his ability to deal with work stress due to physical limitations. The claimant could sit for a maximum of 1 hour. He needed to alternate positions by walking about. He also needed to elevate both legs to waist-level while sitting. The claimant could sit for a total of more than 6 hours in an 8-hour workday. He could stand or walk for about a maximum of 15 minutes at one time. He needed to alternate postures by sitting in a working position. He could stand or walk about for a total of 2 hours in an 8-hour workday. The claimant needed to take rest breaks in the morning, at lunch, [and] in the afternoon at approximately 2-hour intervals during an 8-hour workday to relieve pain and fatigue arising from his impairment. The claimant could never lift [or] carry even 1 pound. He could never balance when standing [or] walking on level terrain because he would lose his balance and fall. He could never stoop. the claimant did not need the use of a hand-held assistive device. He was likely to be absent from work more than 3 times a month as a result of his impairments or treatment (Exhibit 21F).

*Ibid.* ALJ Fallis also stated that he gave "no weight" to " the opinion that the claimant can lift [and] carry no weight." *Ibid.* He explained that

> [t]he claimant has not alleged any limitations in his upper body and has identified chronic weakness only in the lower extremities. This report was completed prior to

> the claimant having been prescribed the use of a hand-held assistive device. Recent evidence provides a more accurate depiction of the claimant's functional abilities.

Tr. 21-22. As to the "recent evidence" of the defendant's physical condition, the ALJ cited only (1) a report that, on April 23, 2012, the plaintiff's primary care doctor prescribed him the use of a cane and referred him for a course of physical therapy; and (2) a report of an MRI of the plaintiff's lower spine taken on May 11, 2012 that "revealed mild disc bulges at L5-S1 through L4-L4 without central canal stenosis or neural foraminal compromise." Tr. 22 (citing Tr. 382, 390-91).

Based on that gloss of the evidence, the ALJ reached his non-disabled conclusion by applying the five-step sequential analysis prescribed by the Secretary in 20 C.F.R. § 416.920. As prescribed by the regulations, the ALJ skipped step one of the analysis (determining whether the plaintiff has engaged in substantial gainful activity), because that step does not apply to a redetermination of disability when a claimant reaches age eighteen. 20 C.F.R. § 416.987(b). The ALJ then determined that the plaintiff suffered from cerebral palsy, degenerative disc disease of the lumbar spine, and bipolar disorder, impairments which were "severe" within the meaning of the Social Security Act (step two); none of those impairments alone or in combination met or equaled a listing in the regulations (step three); and the plaintiff had no past relevant work experience (step four).

In applying the fifth step, the ALJ concluded that the plaintiff had the residual functional capacity to perform a limited range sedentary work as defined in 20 C.F.R. 416.967(a), lifting up to 10 pounds occasionally, with the following further limitations:

> The claimant can stand [and] walk for about 2 hours and sit for up to 6 hours in an 8-hour workday, with normal breaks. The claimant requires a job that would allow the individual to sit or stand alternatively, provided the individual is not off-task more than 10% of the work period. The claimant can occasionally perform pushing or pulling. The claimant can never operate foot controls. The claimant can never

> climb ladders, ropes, or scaffolds. the claimant can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. The claimant is limited to jobs that can be performed while using a hand-held assistive device required at all times when standing and the contralateral upper extremity can be used to lift and carry up to the exertional limits. The claimant needs to avoid all exposure to excessive vibration, all use of hazardous moving machinery, and all exposure to unprotected heights. The claimant requires work that is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple, work-related decisions and routine workplace changes. The claimant can have only occasional and superficial interaction with the public and co-workers and cannot perform tandem tasks.

Tr. 19. A vocational expert testified that, considering all of the limitations found by the ALJ, the plaintiff would be able to perform the following jobs available in various numbers in the lower peninsula region of Michigan: "checker (unskilled/sedentary)" (2,400 jobs available); "sorter" (3,900 jobs); and "bench hand" (3,200 jobs). Based on that testimony and using Medical Vocational Rule 204.00 as a framework, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act.

Following the decision by the ALJ, the plaintiff appealed to the Appeals Council, which denied the plaintiff's request for review on September 24, 2013. This lawsuit followed.

II.

The plaintiff acknowledges that he has the burden of proving that he is disabled and therefore entitled to benefits. *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). Under 42 U.S.C. § 1382c(a)(3)(A) & (B), a person is disabled if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" and the impairment is so severe that the person "is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful activity which exists in the national economy."

Section 1614(a)(3)(H) of the Social Security Act requires that, when any person who is eligible to receive SSI benefits as a child turns 18, his or her disability must be re-determined under the Act, according to the standards applied to an initial claim for disability by an adult:

> If an individual is eligible for benefits under this subchapter by reason of disability for the month preceding the month in which the individual attains the age of 18 years, the Commissioner shall redetermine such eligibility
>
> (I) by applying the criteria used in determining initial eligibility for individuals who are age 18 or older; and
>
> (II) either during the 1-year period beginning on the individual's 18th birthday or, in lieu of a continuing disability review, whenever the Commissioner determines that an individual's case is subject to a redetermination under this clause.

42 U.S.C.A. § 1382c(a)(3)(H)(iii).

The ALJ determined on behalf of the Commissioner that the plaintiff was not disabled. "The Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citing 42 U.S.C. § 405(g); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ibid.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)). "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ibid.* (quoting *McGlothin v. Comm' r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008)).

When "deciding whether to affirm the Commissioner's decision, 'it is not necessary that [the] Court agree with the Commissioner's finding, as long as it is substantially supported in the record.'" *Ibid.* (quoting *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 167 (6th Cir. 2009)). "Even if this Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence." *Id.* at 854-55 (citing *Lindsley*, 560 F.3d at 604-05) (administrative findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion).

The plaintiff contends that remand for an award of benefits or a further hearing is warranted because the ALJ's decision was not supported by substantial evidence. In his motion for summary judgment, the plaintiff argued that the hypothetical question posed to the vocational expert omitted certain limitations. However, in his reply the plaintiff concedes that this argument did not accurately reflect the record evidence, since, as the defendant points out, the hearing transcript and decision show that the ALJ included the exact limitations at issue when he asked the question.

In his sole remaining argument, the plaintiff contends that the ALJ failed to give appropriate weight to the medical source statement of the plaintiff's treating physician, Dr. Darla Hedrick. The plaintiff cites the colloquy from the administrative hearing in which the ALJ accepted a report by Dr. Hedrick into the record, but points out that, in his decision, the ALJ stated that the report would be "assign[ed] little weight," because "[d]ue to the illegible signature, it is impossible to assess which physician or other caregiver completed this form." Tr. 21. The plaintiff argues that this disregard of Dr. Hedrick's report is serious because the opinion of a treating source generally is accorded "controlling weight" over the conflicting opinion of a non-treating source, so long as it is

adequately supported by clinical and laboratory findings and not inconsistent with other medical evidence.

The Commissioner responds that any failure to consider the opinions advanced by Dr. Hedrick was harmless because the ALJ credited those opinions advanced by Dr. Hedrick that were consistent with other evidence in the record, and gave "good reasons" for rejecting the specific opinion to which he gave "no weight" (namely, the opinion that the plaintiff could lift "no weight").

The ALJ's determination that Dr. Hedrick's medical source statement was unauthenticated and that her opinion that the plaintiff could lift and carry "no weight" deserved "no weight" in the determination of the plaintiff's disability is not only unsupported by substantial evidence but plainly contrary to the evidence in the record. As noted above, the ALJ accepted Dr. Hedrick's report into the record during the hearing and stated that he would consider it during his deliberations. However, in his written decision, ALJ Fallis inexplicably referred to the source as unauthenticated and stated that he could not even determine if the source was a medical practitioner or ever had treated the plaintiff. That conclusion is plainly contradicted by the ALJ's conclusion that the reporter had "treated the claimant 20 times in the past 2 years for cerebral palsy, bilateral lower extremity spasticity, and osteoarthritis." Tr. 21.

The Secretary considers a treating source a claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]. 20 C.F.R. § 404.1502. Dr. Hendrick satisfies the definition of a treating source.

The well-established general rule is that a treating physician's opinion should be given greater weight than those opinions of consultative physicians who are hired for the purpose of

litigation and who examine the claimant only once. *See Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985). Moreover, if a treating physician's opinion is not contradicted, complete deference must be given to it. 20 C.F.R. § 404.1527(d)(2) (stating that a treating source's opinion will control if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record"); *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *see also Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) ("The expert opinions of a treating physician as to the existence of a disability are binding on the fact-finder unless contradicted by substantial evidence to the contrary."). "If the ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

The reasons given by the ALJ for rejecting the opinion of a treating source must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, at *12 (July 2, 1996). As the Sixth Circuit explained in *Cole*:

> This requirement is not simply a formality; it is to safeguard the claimant's procedural rights. It is intended to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an

> administrative bureaucracy that he is not. Significantly, the requirement safeguards a reviewing court's time, as it permits meaningful and efficient review of the ALJ's application of the [treating physician] rule.

*Cole*, 661 F.3d at 937-38 (quotations, alterations, and citations omitted).

In rejecting Dr. Hedrick's opinion, the ALJ did not reference or consider any of the specific factors that the Sixth Circuit has set forth as proper considerations when deciding what weight to give the report of a treating source, as outlined in *Wilson*. *See* 378 F.3d at 544. Instead, the ALJ merely discounted the report that the plaintiff could not lift or carry any weight because, in the ALJ's determination, it was inconsistent with the plaintiff's claim and his own testimony. That determination, in addition to failing to address the relevant factors, also is unsupported by the record. The Sixth Circuit has held that remand is warranted in any case where the ALJ failed to "'make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Cole*, 661 F.3d at 937 (quoting Soc. Sec. Rul. No. 96–2p, at *12 (July 2, 1996)).

The Commissioner asserts that even if the ALJ erred, his failure to explain his reasons for rejecting Dr. Hendrick's opinion was harmless error. "[A] violation of the good reasons rule can be deemed to be 'harmless error' if '(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation.'" *Cole*, 661 F.3d at 940 (quoting *Friend v. Comm'r of Soc. Sec.*, 375 Fed. App'x 543, 551 (6th Cir. 2010)). None of those circumstances is supported by the record in this case.

As the Commissioner correctly points out, Dr. Hedrick's report is consistent with the ALJ's assumed limitations to the extent of stating that the plaintiff could stand or walk for two hours in an eight-hour workday and sit for six hours. Tr. 374-75. However, contrary to the Commissioner's position, the ALJ's decision to reject Dr. Hedrick's other findings was not harmless, because the ALJ's stated reasons for rejecting those findings were unsupported by the record and contrary to the testimony that the ALJ purported to rely upon in rejecting the report. Several reasons support this conclusion.

*First*, the limitation cited by Dr. Hedrick in her report referred to the plaintiff's ability to "lift *and carry*," Tr. 375-76, not simply to "lift" or to lift while in a seated position. The ALJ cited the plaintiff's testimony that he could "lift 10 pounds," but the plaintiff actually testified at the hearing that "I'm able to lift 10 pounds and *then I lose my balance*." Tr. 59. That testimony is consistent with the plaintiff's other testimony that he is never left alone with his young son, and that "I'm scared to pick [my son] up and walk around with him," because "I don't want to lose my balance and have us both fall." Tr. 64. The ALJ did not discredit the extensive medical history documenting the atrophy, pain, and muscle spasms in the plaintiff's legs due to his cerebral palsy, and also accounting for years of physical therapy that evidently yielded only mixed results as to the plaintiff's ability to stand and walk without assistance. The ALJ's reliance on his observation that the plaintiff did not claim any limitations in his upper extremities is specious in light of the apparent fact that lifting and carrying any amount of weight would require the plaintiff to use both his arms and legs, and there is no dispute that the plaintiff has had serious muscular and neurological problems with his legs since birth, as a result of his diagnosed cerebral palsy and degenerative spinal disease. The government also cites a statement by the plaintiff that he enjoyed "lifting weights," but that

statement did not refer to any specific exercises that he performed, and it is self-evident that a number of common weight-lifting moves can be performed while seated or in a supine position, without any requirement to lift *and carry* the weights involved.

The ALJ's conclusion that the use of a cane would allow the plaintiff to walk and balance while carrying up to ten pounds of weight in the hand opposite the one in which the cane was held is speculative, unsupported by any medical opinion in the record, and contrary to common sense. None of the medical sources that the ALJ cites opined that use of a cane could improve the plaintiff's ability to maintain his balance while lifting or carrying anything as the ALJ assumed, and, for obvious reasons, such an asymmetrical and *un*balanced posture only would tend to aggravate any problems the plaintiff had in maintaining his balance while walking, not resolve them.

*Second*, the government contends that there was no medical evidence that the plaintiff's condition worsened from the time of 2010 reports when he could balance on one foot to the time of the hearing. That argument is contrary to the ALJ's finding that the plaintiff had a *degenerative* disc disease of the spine. It also disregards the evidence of Dr. Hedrick's report, which — if it had not been discounted and largely ignored — did provide medical evidence of worsening problems. Moreover, the fact that the plaintiff was prescribed a cane for walking in 2012 certainly suggests that he had more problems with balance and mobility at that time than he did in 2010 or 2011. The medical evidence of the plaintiff's declining mobility is consistent with his testimony that at the time of the hearing, although he could stand and walk for short periods, he was having more pain in his spine and more trouble keeping his balance, to the point where he had started sitting down while showering, since he could not stand up for long enough to complete a shower. Tr. 54-55.

*Third*, the government maintains that Dr. Hedrick's report was "internally inconsistent" because she opined that the plaintiff could "never" balance while walking on a level surface, but she also checked "no" as to the question whether the plaintiff needed a cane or other assistive device to walk or stand. That inconsistency is sensibly resolved if the report is read to opine simply that the plaintiff could "never" stand or walk *while carrying a load*, because while doing so he would be at risk of losing his balance and falling, even if he could, as late as November 2011, stand and walk in an unburdened posture without a cane or other assistive device. That reading is fully consistent with the testimony by the plaintiff that the ALJ cited and credited in his decision.

Finally, the ALJ's determination that "recent evidence" better reflects the plaintiff's condition is unsupported by anything in the record, because the two reports that the ALJ cited which were dated after November 11, 2011 did not contain any description of the plaintiff's physical limitations, but merely reflected the prescription of a cane for walking and the observation of certain spinal conditions on an MRI, with no commentary as to their significance for the plaintiff's physical capabilities. If anything, the recent prescription of a cane for walking only suggested that the plaintiff's condition had gotten worse, not better, from 2011 to 2012.

The ALJ erred in rejection the opinion of Dr. Hendrick, a treating source. That leaves the question whether further fact-finding is required, for "[i]f a court determines that substantial evidence does not support the Secretary's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The district court should award benefits in cases where "proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is

lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). There is evidence in the record that contradicts a finding of disability. The better course is to remand for further proceedings to allow the ALJ to assign appropriate weight to Dr. Hendrick's opinion and resolve factual disputes.

III.

Because the ALJ failed to give good reasons for giving "no weight" to the opinion of Dr. Darla Hedrick that the plaintiff could lift and carry "no weight" in a work environment, further proceedings are required.

Accordingly, it is **ORDERED** that the plaintiff's motion for summary judgment [dkt. #14] is **GRANTED** in part.

It is further **ORDERED** that the defendant's motion for summary judgment [dkt #17] is **DENIED**.

It is further **ORDERED** that the matter is **REMANDED** to the Commission for further administrative proceedings.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 31, 2015

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 31, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI